# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DEBORAH L. WALKER,

      PLAINTIFF,

VS.                              CASE NO.: CV-08-J-1449-S

MICHAEL ASTRUE,
Commissioner of Social Security,

      DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties.  This Court has jurisdiction pursuant to 42 U.S.C. § 405.[1]  The plaintiff seeks disability Supplemental Security Income based on residual impairments from two strokes and mood disorders (R. 105, 390).

On appeal, the plaintiff argues that the decision of the Administrative Law Judge (ALJ) that the plaintiff is capable of work with no exertional limitations is against the substantial weight of the evidence.  Plaintiff's memorandum at 1, 7.

---

[1]This case was previously remanded by the Appeals Council for the Administrative Law Judge to adequately evaluate the opinion of consultative examiner Dr. Susan Kotler, Ph.D. (R. 382-393).  The ALJ was further instructed to obtain additional evidence regarding the plaintiff's mood disorder, status post two cerebrovascular accidents with depressive features, and adult antisocial behavior (R. 82).  After remand, further evidence and an additional hearing, the ALJ entered the decision now before this court.

The court has considered the record and the briefs of the parties.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED**.

### Factual Background

The plaintiff was born on February 4, 1952, completed the twelfth grade in school and attended college for approximately one and a half years (R. 111, 505).  The plaintiff has solely unskilled previous work experience, ranging from the sedentary to the light range  (R. 478).  At the time of the hearing, she was working in a fast food restaurant cleaning food trays, four hours a day, five days a week (R. 455-456).  The plaintiff was allowed to perform this work seated because she could not stand for long periods of time (R. 460).  The plaintiff alleges this is due to problems with her right leg (R. 460).  The plaintiff testified at the hearing that she needs a cane, but does not have one (R. 460-461).  When she started this job, she was supposed to work six hour days, but the manager lets her work less because she needed the money, but could not work six hours a day (R. 463).  She could not work the six hour shifts because she could not stand and also because her right hand shakes so badly she could not serve drinks (R. 464).  The plaintiff further testified she has no limitations sitting (R. 467).

The medical records reflect that, while incarcerated, the plaintiff suffered a cerebrovascular accident (CVA) in August 1999 (R. 225, 237, 240).  Thereafter, her speech was noted to be slow and slurred (R. 231, 233, 235).  Records reflect that her

2

verbalization skills increased but she continued to suffer speech problems and suffered memory loss (R. 219, 230). An MRI in October 1999 found multiple areas or infarction (R. 218). The plaintiff was paroled on October 1, 2001 (R. 51).

Medical records from December 2001 reflect that the plaintiff was seen because she was "having trouble getting words out and expressing herself" (R. 250). Impaired speech, pain on her left side and weakness in her right arm were noted (R. 250). An MRI at that time found lesions in the left frontal and parietal regions consistent with on old infarct (R. 254).

The plaintiff was seen in June 2002 with complaints that she thought she had a stroke (R. 255). She complained of right side paralysis and being unable to write with her right hand (R. 255). However, a drug screen at that time was positive for cocaine and the plaintiff was diagnosed with crack cocaine abuse and discharged (R. 255, 258). Later records suggest that the plaintiff was actually hospitalized at this time for a stroke, followed by physical, occupational and speech therapy (R. 273, 277-318). The physical therapy records note that upon discharge, the plaintiff could walk without an assistive device, and that her leg strength on the right was 3-/5, and on the left was 4+/5 (R. 277, 295). She was noted to still complain of right arm numbness and right hand pain (R. 297, 302, 309). Upon discharge from speech therapy, the plaintiff was noted to have made no progress toward the short term memory and math goals set for

3

her (R. 278).  However, she was discharged because she had plateaued (R. 278).  These skills were noted to be slightly decreased at the time of discharge in November 2002 (R. 281).  Occupational therapy notes reflect that the plaintiff had difficulty feeding herself, her right leg hurt, and that strength in her right arm was significantly decreased (R. 291).  Right facial weakness, moderately-severe receptive/expressive aphasia, and mild difficulty swallowing were noted (R. 293, 303).

The plaintiff was sent to Dr. Cheri Wiggins for a consultative physical evaluation in October 2002 (R. 259).   At the time, the plaintiff complained of lightheadedness, weakness, swelling, pain in her right knee and hand, difficulty remembering and pain upon ambulation (R. 259, 260).  The plaintiff was tearful for the entire examination, hindering Dr. Wiggins' ability to obtain information (R. 260).  The plaintiff was noted to have difficulty finding words, a slow but normal gait, and a facial droop (R. 260-261).  Dr. Wiggins noted inconsistencies in her examination, such as the plaintiff being unable to cooperate with leg testing, but then walked without difficulty (R. 262).  Additionally, the plaintiff asserted she could not move her right hand, but then used it to hold several items as well as wave (R. 262).  Despite her trouble with carrying on a conversation with Dr. Wiggins, the plaintiff was then overheard on the phone speaking fluently (R. 262).  Dr. Wiggins declined to venture a guess as to the plaintiff's physical abilities due to the multiple inconsistencies (R. 262).

4

The plaintiff was seen in December 2002 for a psychological consultative evaluation (R. 273). Upon examination, the plaintiff was noted to be anxious and to have some "word-finding problems" (R. 274). She was noted to be slow to respond and somewhat dramatic (R. 274). Her speech was halting, but understandable (R. 274). Motor activity was noted to be normal, but there was gait disturbance (R. 274). Her mood was noted to be somewhat dysphoric (R. 274). The plaintiff's effort during the examination was questionable, causing thought process and content to be difficult to assess, and her recent and remote memory was deemed impaired (R. 274). The plaintiff did not appear depressed or severely anxious, but the examiner found the plaintiff to have a cognitive disorder (R. 275).

Upon examination in March and June 2003 the plaintiff was noted to have trouble following simple commands and dysarthric language (R. 369). Her diagnosis remained "stroke" (R. 369). She had speech problems (R. 373). An April 2003 MRI noted a previous infarction in the right frontotemporal and parietal areas with no new areas of infarction seen (R. 378).

From 2003-2004 the plaintiff received mental health treatment (R. 339-362). Medical records reflect that the plaintiff suffered from a mood disorder, depression and substance abuse historically, although she had been "clean" for more than eight years (R. 339, 341, 344, 349). These records note that the plaintiff is bothered by voices

5

calling for "help" (R. 343, 345).  At the time, the plaintiff was seeking employment (R. 344).  She was noted to suffer from major depression with psychotic features, a mood disorder due to CVA with major depression -like features, and adult anti-social behavior (R. 351, 354-362).  Her Global Assessment of Functioning Score was 51 (R. 352).

The plaintiff was sent to Dr. Susan Kotler, Ph.D., for a psychological consultative evaluation in October 2004 (R. 383).  Dr. Kotler noted that the plaintiff had been working part time, was fired, and reported she could not obtain other employment because people "notice her shaky handwriting on the applications" and "know something is wrong with me" (R. 384).  Dr. Kotler noted that the medical information she was provided confirmed the plaintiff's reports of decreased strength on her right side, memory difficulties and speech impairment as a result of the two strokes (R. 385).  She further noted that while the records she was provided reflected questions about inconsistencies and inaccuracies by the plaintiff, they also reflected problems following simple and complex commands, nonfluent speech, restricted visual fields, and decreased strength on the right (R. 386).  Dr. Kotler observed mild tremors in the plaintiff's right hand upon use, a mild right facial droop, slow but normal ambulation, and some evidence of higher level visual information processing deficits (R. 387).   However, Dr. Kotler also saw evidence that the plaintiff may be

exaggerating the severity of her cognitive problems (R. 387, 390). Dr. Kotler further noted either word retrieval or comprehension difficulties (R. 388). After extensive testing, Dr. Kotler formed a diagnosis of mood disorder due to two strokes, with depressive features, cognitive disorder, and adult antisocial behavior, and assigned a GAF of 60 (R. 390). In Dr. Kotler's opinion, the plaintiff's exaggerated presentation was likely due to habitual antisocial behavior rather than intentional (R. 390). Dr. Kotler concluded:

> It is unfortunate that Ms. Moffett appears to have enhanced her deficits on today's examination because it is difficult to determine the severity of any deficits she may actually have as a result of her strokes. Nevertheless, the records consistently describe decreased strength on the right side, problems with regulation of affect, visuoperceptual recognition abnormalities, and difficulties with speech production, all of which are evident today, and which are, therefore, probably real deficits. Although the extreme slowness and halting quality of her verbal responses appear exaggerated and varies depending on the situation, such difficulties with speech production are consistent with the location of her strokes ....

R. 390.

In a mental residual functional capacity questionnaire, Dr. Kotler opined that the plaintiff had moderate restrictions of activities of daily living and ability to respond to customary work pressures, a marked limitation in concentration, persistence or pace, moderate restrictions in understanding, remembering, and carrying out instructions in a work setting, and moderate restrictions in responding appropriately to supervision

and co-workers (R. 392-393).  She further noted that impaired judgment and practical problem solving could affect safety in a job setting (R. 393).

The plaintiff was seen for psychiatric problems in August 2005 (R. 436).  Those records reflect that the plaintiff was "hearing things," and suffered from confusion and memory changes (R. 436).  She was diagnosed with Major Depressive Disorder, Recurrent, Moderate (R. 440).  A further note suggests a psychotic disorder secondary to CVA with hallucinations (R. 440, 442).  A GAF of 63 was assigned at the time (R. 440).

Dr. Walter Mauney completed a Clinical Assessment of Pain form and Physical Capacities Evaluation form for the plaintiff in December 2005 (R. 410-414).  In those evaluations, Dr. Mauney opines that the plaintiff suffers from pain to such an extent that it would be distracting to completion of work related tasks (R. 410), that fatigue and weakness is present but does not prevent work activities, and that physical activity would increase these symptoms to a degree that caused total abandonment of a task (R. 412).  He further believed the plaintiff could lift ten pounds or less occasionally, could sit for two hours in an eight hour work day, and stand and walk for no more than one hour in an eight hour work day (R. 414).  Dr. Mauney opined the plaintiff could never perform push/pull movements and only occasionally perform other acts of manipulating objects, bending, stooping, and reaching (R. 414).  Upon examination,

8

Dr. Mauney noted hesitant speech and that the plaintiff complained of chronic pain (R. 434).

Dr. Mauney referred the plaintiff to Cooper Green Hospital's pain management clinic (R. 430). Records from Dr. Mark Wilson reflect that the plaintiff complained of low back pain and had an MRI revealing mild degeneration/facet disease of her lumbar spine (R. 424, 425, 426). Upon examination in April 2006 Dr. Wilson noted that the plaintiff's speech was "halting," she complained of right sided pain and that she has decreased reflexes on the right (R. 430). She was prescribed Ultram for right leg and right finger pain, but it was not helping (R. 424). She also had a prescription from Dr. Mauney for Lortab for pain (R. 424). In July and November 2006 Dr. Wilson noted plaintiff's right sided pain and suspected it was secondary to her strokes (R. 424, 425). A CT scan in December 2006 found no acute process and changes consistent with an old CVA (R. 426).

The plaintiff was sent for another consultative evaluation in May 2007 to Dr. Gordon Kirschberg, a neurologist (R. 415). According to Dr. Kirschberg, the plaintiff could barely cooperate for an evaluation and seemed unable to talk or function in any way although she could walk (R. 415). He noted difficulty with the plaintiff's right side and some weakness on the left (R. 415). He believed her greatest difficulty to be in communication (R. 415). Sensory perception was decreased up and down the

9

plaintiff's entire right side (R. 416).  Deep tendon reflexes were decreased in all

extremities (R. 416).  However, an EMG was completely normal (R. 416, 418).  Dr.

Kirschberg concluded:

> This lady certainly may have some sever (sic) psychiatric problems.
> There is a great deal of difficulty in interpreting what I am seeing today
> however, the consistent parts seem to be some receptive and some
> expressive aphasia and also some weakness and sensory loss on the right
> side.  This was consistent throughout the exam with hyperactive reflexes.
> There is no question that she deserves disability.   She can barely
> communicate let alone walk or do anything which requires physical
> activity....

R. 416-417.  A Medical Source Opinion Form – Physical completed by Dr. Kirschberg

found the plaintiff could only stand and walk for a combined total of one and a half

hours in an eight hour day, but was unlimited in sitting (R. 420).  He believed she

could lift and carry no weight (R. 420) and could perform no push/pull movements

with her right arm or leg, but was unlimited in her ability to do so with her left arm and

leg (R. 421).  He assigned similar limitations on handling to an unlimited ability to do

so with the left side only (R. 421).  Few other limitations were noted (R. 421-422).

The plaintiff returned to the Community Psychiatric program in May 2007 with

complaints she had been out of medicine for several years, was worrying over "things"

and suffered from right sided physical defects (R. 443).  She was noted to have

recurrent thoughts of death (R. 443).  She also demonstrated symptoms of anxiety,

psychoses, confusion, memory changes and decreased concentration (R. 443).  At the time, the plaintiff was working part time at Milo's restaurant, four hours a day (R. 445).  Her speech was slowed and showed signs of blocking, her affect was tearful and sad, and her cognitive functioning showed signs of decreased memory and decreased concentration.  Her Mini-Mental Status Exam score was 21, which is within the range of "depressed with cognitive impairment" (R. 447).   The plaintiff was diagnosed as suffering from Major Depressive Disorder, Recurrent, without psychotic features (R. 448).  Her GAF score was 50 (R. 448, 449).

The plaintiff does little cleaning or grocery shopping because her husband's home health care nurse helps with all of that (R. 458, 461, 477).  The nurse cooks for them (R. 461).  The plaintiff tried working more than four hours a day, but could not do it (R. 463).  She cannot stand that long and she could not serve drinks at the restaurant because her hand shakes and hurts (R. 464).  She has trouble standing too, but has no limitations on her ability to walk (R. 466).  If she could sit all day, she could work more hours, but the restaurant will not let her do that (R. 467).

The VE testified that an individual of plaintiff's age, education and work experience, who could complete simple tasks, could maintain attention for two hours at a time, with limited contact with the general public, and non-confrontational supervision, could perform plaintiff's past relevant work as a housekeeper or her

11

current position (R. 479). The VE further testified, upon questioning from the ALJ, that there would be jobs in the medium range of exertion that such a person could perform (R. 480). The VE further testified that, should the plaintiff's testimony be found credible, she could not perform greater than sedentary work (R. 481). Additionally, the jobs the VE referenced required both gross and fine manipulation skills (R. 481).

### Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

12

*Lamb*, 847 F.2d at 701.   Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

## Legal Analysis

In this case, the ALJ determined that the plaintiff had a residual functioning capacity to perform work "at all exertional levels" with additional limitations (R. 25). The ALJ specifically found that the plaintiff's impairments prevent her from performing her past relevant work (R. 30), but also found that the plaintiff could perform a variety of medium level work (R. 31).

This court finds the record does not support this decision and that the ALJ could only reach this conclusion by ignoring or substituting his judgment for the medical evidence contained in the record.  Numerous medical records document the plaintiff's trouble with speech following her second stroke and further document her continued complaints of pain in her right extremities.  Numerous records, discounted by the ALJ, conclude that the plaintiff would have moderate to marked difficulties in maintaining the non-exertional functioning necessary for gainful employment.   The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir.1991).

13

Here, sufficient reasoning has not been provided.  The ALJ states that he gives no weight to Dr. Kolter's opinion that the plaintiff has marked restrictions in maintaining concentration, persistence and pace because the plaintiff did not cooperate fully (R. 27).  However, Dr. Kolter's records clearly reflect her medical opinions *given that* the plaintiff did not cooperate fully.  The court further finds the ALJ's conclusion – that the plaintiff's statements that she reads a bible contradicts Kolter's opinion that the plaintiff has marked limitations in persistence and pace – to be illogical.  The court is unable to find that reading a bible is evidence of no limitations in persistence or pace.

The ALJ gives no weight to the opinions of Dr. Mauney, specifically the 2005 questionnaire he completed finding the plaintiff capable of less than sedentary employment, because the ALJ believed Dr. Mauney to have not examined the plaintiff since 2002 (R. 28).  This ignores the 2005 record of Dr. Mauney and the 2006 referral by Dr. Mauney to the pain clinic.  In the Eleventh Circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). "Good cause" exists where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.  *Id.*  Here, the ALJ's failure to give the opinions of Dr. Mauney and Dr. Wilson considerable weight was error.  No records

14

directly contradict the findings of either doctor.  Both doctors recognize that the plaintiff suffers from right-sided limitation, as well as limitations standing and walking, and no medical evidence contradicts these findings.

The ALJ states he gives the objective findings of Dr. Kirschberg significant weight but gives his opinion that the plaintiff is disabled no weight because Dr. Kirschberg opined that the plaintiff could perform less than the sedentary level of work activity (R. 28).  However, the court notes that those same objective findings are on what  Dr. Kirschberg, a neurologist, based his opinions.  The ALJ's basis for disregarding these opinions, that the plaintiff can work four hours a day, is not substantial evidence that the plaintiff can perform an unlimited range of work activities eight hours a day, five days a week.

Because he ignored all of the evidence of the plaintiff's medical ailments in the record, the ALJ then determined that "the objective medical evidence does not document significant physical limitations resulting from strokes ... that restrict the claimant's abilities to sit, stand, walk, lift, carry, bend, stoop, kneel, crouch, crawl, or perform gross and fine manipulation (R. 28).  The ALJ discounted any problems with speech that the plaintiff alleged because it was "intelligible" at the hearing (R. 28).  This is improper.  *McRoberts v. Bowen,* 841 F.2d 1077, 1081 (11th Cir.1988).  Although credibility determinations are reserved to the ALJ, the Eleventh Circuit has

15

"condemned" the use of a "sit and squirm" test. *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir.1987); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982). The ALJ's discounting of the plaintiff's speech problems because she was "intelligible" is no more than application of a "sit and squirm test" and therefore simply error. *See id.* The hearing record clearly reflects that the plaintiff's speech was permeated with repetition and stuttering. She had trouble finding the right words at one point. This conclusion is supported by voluminous medical records documenting the plaintiff's speech limitations.

The ALJ's conclusion that the plaintiff can perform an unlimited range of work activity is inconsistent with the numerous medical records documenting right side pain and decreased reflexes on the right. Dr. Wilson found the plaintiff's statements credible (R. 424-425). Dr. Kirschberg found the plaintiff could only stand and walk for a combined total of one and a half hours in and eight hour day, but was unlimited in sitting (R. 420). He believed she could lift an carry no weight (R. 420) and could perform no push/pull movements with her right arm or leg, but was unlimited in her ability to do so with her left arm and leg (R. 421). Dr. Mauney opined that the plaintiff could lift ten pounds or less occasionally, could sit for two hours in an eight hour work day, and stand and walk for no more than one hour in an eight hour work day (R. 414). Dr. Mauney opined the plaintiff could never perform push/pull movements and only

16

occasionally perform other acts of manipulating objects, bending, stooping, and reaching (R. 414).   The occupational therapy records reflected that the plaintiff had difficulty feeding herself, her right leg hurt, and that strength in her right arm was significantly decreased (R. 291).   Right facial weakness, moderately-severe receptive/expressive aphasia, and mild difficulty swallowing were noted (R. 293, 303). Even the state agency medical consultant opined the plaintiff was limited to a reduced range of light work, to which the ALJ also afforded little weight (R. 29).   The court finds that all of these medical records and opinions are quite consistent regarding the plaintiff's physical limitations.   The sole opinion which contravenes them is the opinion of the ALJ.  The medical evidence as a whole is not compatible with the ALJ's opinion that the plaintiff can engage in unlimited work activity.   At best, the medical opinions and treatment records before this court limit the plaintiff to the sedentary level of work activity. The ALJ cannot arbitrarily reject uncontroverted medical testimony, and every doctor who provided an opinion came to similar conclusions regarding the plaintiff's ability to engage in substantial gainful activity.  *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985).  "The ALJ is not a medical doctor and his opinion is not to be substituted for medical evidence supporting disability." *Youngblood v. Shalala*, 1994 WL 722863 (N.D.Ala.1994) at 4.

Given the general  agreement among all examining doctors, the court finds the ALJ's rejection of the plaintiff's limitations to be error.  No doctor who examined the plaintiff opined that the plaintiff was malingering.  Several doctors believed the plaintiff to be exaggerating her symptoms, but even their records reflect that the plaintiff has limitations on her ability to perform work related activity.  By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of all of the medical reports in the file.  "As the hearing officer, [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional."  *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir.1992).

The ALJ did not consider all of the evidence that was introduced into evidence. The record clearly establishes, by more than substantial evidence, that the plaintiff can perform no more than sedentary work activity.  At the time of the plaintiff applied for benefits she was 50 years old, or "approaching advanced age." 20 C.F.R. Part 404, subpt. P, App. 2, § 201.00(g).  At the time of the October 2007 hearing, the plaintiff was 55 years old, which is "advanced age."  *Id*., § 201.00(d).  She was a high school graduate with no transferrable work skills and solely unskilled work experience. Given the plaintiff's physical limitations, as well as the plaintiff's age, education and past work experience, the Social Security regulations demand a finding of "disabled." *See* 20 C.F.R. Part 404, subpt. P., App. 2, Rules 201.05; 201.12; *Phillips v. Barnhart*,

18

357 F.3d 1232, 1243 (11th Cir.2004); *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir.1996); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir.1987) ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

The court notes that while the plaintiff is determined to be disabled due to her physical limitations, the plaintiff suffers from stroke-related mental limitations as well. The ALJ's determination that the plaintiff is not disabled is against the substantial weight of the evidence. The ALJ could only reach the result he did by ignoring the objective medical evidence regarding the plaintiff's physical and mental conditions, which mandates reversal. *See e.g, McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir.1986) ("Stated succinctly, the ALJ attached too much weight to the supposed "exaggeration" by appellant of her pain. Such a personal idiosyncrasy should not be permitted to detract from the objectively established medical facts which demonstrate her inability to work"). This court finds that the substantial weight of the evidence dictates that the plaintiff has been under a disability since her alleged onset date, and therefore the plaintiff is entitled to supplemental security income.

## Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have

19

made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984).  Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence.  *Davis v. Shalala*, 985 F.2d at 534; *Bowen v. Heckler*, 748 F.2d 629 (11th Cir.1984).  Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

      **ORDERED** that the decision of the Commissioner is **REVERSED.**  This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

      **DONE** and **ORDERED** the 30th day of January 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE